[No. B239642. Second Dist., Div. Seven. Aug. 20, 2012.]

ALLEN M. ENTIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Real
Party in Interest.

**COUNSEL**

Jacbos & Jacobs, Stanley K. Jacobs; Law Offices of Robert W. Eisfelder and Robert W. Eisfelder for Petitioner.

No appearance for Respondent.

Barger & Wolen, Edwin A. Oster and Jenny H. Wang for Real Party in Interest.

**OPINION**

**ZELON, J.—**

## INTRODUCTION

Petitioner Allen M. Entin owned two disability income insurance policies. In 2009, Entin filed a claim asserting that migraine headaches had rendered him totally disabled. Entin's insurer, respondent Provident Life and Accident Insurance Company, agreed to pay Entin benefits while investigating his claim. At the conclusion of its investigation, Provident filed a declaratory relief action seeking a determination that Entin was not totally disabled

within the meaning of his policies. The complaint clarified that Provident would continue to pay Entin benefits during the pendency of the action and would not seek reimbursement of those payments. Entin requested a jury trial. The trial court denied the request, concluding that Provident's claim was equitable in nature because Provident was continuing to pay Entin disability benefits during the pendency of the action.

Entin filed a petition for writ of mandate seeking an order directing the superior court to grant his request for a jury trial. We issued an order to show cause and now conclude that the trial court erred in denying Entin a jury trial. In the context of declaratory relief actions, the right to a jury trial depends on whether the issues raised in the complaint are legal or equitable in nature. Provident's declaratory relief claim raises factual questions pertaining to contractual rights, which are legal in nature. Although Provident has elected to pay Entin benefits while pursuing the action, that does not transform the nature of the dispute into one arising in equity. Entin is therefore entitled to a jury trial.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1991, petitioner Allen Entin purchased a disability income insurance policy that provided benefits of $20,000 per month in the event that he became totally disabled. Entin also purchased an "overhead expense disability policy" that provided benefits up to $360,000 in the event that he became totally disabled. Both polices defined the term "totally disabled" to mean: "(1) [the insured is] not able to perform the substantial and material duties of [his] occupation; and [¶] (2) [the insured is] receiving care by a [p]hysician which is appropriate for the condition causing the disability."

On September 3, 2009, Entin filed a claim alleging that migraine headaches had rendered him incapable of performing the substantial and material duties of his occupation as an obstetrician and gynecologist. Entin's insurer, Provident Life and Accident Insurance Company, reviewed the claim and began paying Entin disability benefits under a reservation of rights.

On August 31, 2010, Provident filed a declaratory relief action seeking a determination that Entin was not entitled to disability benefits. The complaint did not raise any issue regarding the construction of the insurance policies. Instead, it asserted that the parties disputed whether the evidence showed Entin was "totally . . . disabled within the meaning of [those] [p]olicies." According to the allegations in the complaint, Entin informed Provident that

---

[1] This factual summary is based on the allegations in the parties' pleadings. These facts are undisputed except where noted.

the "doctors whom he ha[d] consulted" believed he was "no longer capable of performing his occupation as an obstetrician and gynecologist because of . . . migraine headaches of totally disabling proportions." After receiving this information, Provident conducted a medical examination of Entin, reviewed his medical records and interviewed his "[medical care] treaters." Provident's investigation allegedly revealed "Entin [wa]s not totally . . . disabled within the meaning of the Policies" and raised "substantial question[s]" as to whether he was "receiving appropriate care for his claimed medical condition as contractually required."

The complaint clarified that although Provident did not believe Entin was totally disabled, it would "continue[] to pay [his] disability claim . . . until [the] Court issue[d] its determination of the rights and responsibilities of the parties . . . ." The complaint also stated that Provident "[would] not attempt[] to recoup any sums" paid prior to the entry of judgment.

Entin filed a cross-complaint for breach of the implied covenant of good faith and fair dealing alleging that Provident's declaratory relief action was part of a "scheme" to "forc[e] its insureds . . . to settle otherwise legitimate claims for less than the value of the claim."[2] The cross-complaint further alleged that Provident filed its action knowing that Entin was entitled to benefits and would be forced to "incur attorneys fees defending the charges brought against him."

Provident demurred to the cross-complaint, arguing that Entin could not pursue a "claim for bad faith . . . in the absence of a breach of the underlying insurance contract[s]." Provident contended that the allegations in the cross-complaint admitted Entin was still receiving disability benefits, thereby demonstrating that no breach had occurred. In his opposition, Entin asserted that regardless of whether he was still receiving benefits, he had properly stated a claim for breach of the implied covenant by alleging that Provident filed a "a sham Complaint for Declaratory Relief" that "placed a cloud on [his] disability benefits causing [him] to incur litigation expenses and emotional distress." The trial court sustained Provident's demurrer "without leave to amend."[3]

---

[2] We refer here to Entin's first amended cross-complaint, which he filed after Provident demurred to his original cross-complaint.

[3] Entin filed a petition for writ of mandate seeking an order reversing the trial court's decision to dismiss his cross-complaint without leave to amend. We summarily denied the petition on November 10, 2011. (*Entin v. Superior Court*, B237116). Entin then filed an appeal of the trial court's order dismissing his cross-complaint. On April 30, 2012, we dismissed the appeal, concluding that the trial court's order was not an appealable final judgment. (*Provident Life & Accident Ins. Co. v. Entin*, B238207). (See generally *ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 122 Cal.App.4th 994, 1002 [19 Cal.Rptr.3d 340] ["Under

In February of 2012, the parties submitted opposing briefs addressing the issue of Entin's right to a jury on Provident's declaratory relief claim. Entin argued that he had a right to a jury because the case raised factual issues concerning his entitlement to contractual insurance benefits. Provident, however, argued that there was no right to a jury because "the underlying claim and relief sought—identification of prospective right under the insurance policies—is [*sic*] purely equitable in nature." On February 22, 2012, the trial court ordered that Entin did not have a right to a jury "in light of the fact that payments [under the policies] are ongoing."

Entin filed a petition for writ of mandate seeking an order from this court directing the superior court "to vacate its order . . . granting . . . a court trial" and "to enter a new and different order . . . granting [Entin's] motion for a jury trial." We issued an order to show cause on April 10, 2012.

## DISCUSSION

### A. *Standard of Review*

The issue of whether Entin is "constitutionally entitled to a jury trial . . . is a pure question of law that we review de novo." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23 [24 Cal.Rptr.3d 233] (*Caira*); see *Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 904 [81 Cal.Rptr.3d 503] ["[w]hether [plaintiff] is entitled to a jury trial is an issue of law that we review de novo"].)

### B. *Summary of Relevant Case Law*

#### 1. *The right to a jury trial in declaratory relief actions*

■ "The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) . . . [T]he right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted . . . . As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' [Citations.] [¶] . . . ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends

---

the one final judgment rule, [a] defendant c[annot] appeal[] from [a] judgment as to the cross-complaint while proceedings remain[] pending as to the complaint."].)

upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.] Although . . . 'the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded' [citation], the prayer for relief in a particular case is not conclusive [citations]." (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8–9 [151 Cal.Rptr. 323, 587 P.2d 1136] (*C & K Engineering*).)

■ Our courts have frequently "characterized" declaratory relief actions as "being 'equitable . . .' [in nature]." (*Interinsurance Exchange v. Savior* (1975) 51 Cal.App.3d 691, 694 [124 Cal.Rptr. 239] (*Savior*).) They are, "in fact, *sui generis* and may raise either legal or equitable issues." (*Veale v. Piercy* (1962) 206 Cal.App.2d 557, 560 [24 Cal.Rptr. 91] (*Veale*).) Consequently, the right to a jury "may not be denied . . . simply because the[] action is one for declaratory relief." (*Ibid.*) Rather, as with other types of claims, " 'the proper inquiry is the sometimes difficult one whether the *issues* [raised in the action] are legal or equitable in nature.' " (*Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1300 [33 Cal.Rptr.2d 771] (*Manneck*).) The difficulty of this task is " 'multiplied when the relief sought is a *"sui generis"* declaration [of rights] in which event the court is even deprived of the advantage of considering the prayer as an indication of whether or not the claim is addressed to equity.' " (*Veale, supra*, 206 Cal.App.2d at p. 561.)

Federal courts have employed a slightly different inquiry to aid in determining whether the right to a jury attaches in declaratory relief actions, asking "whether there would have been a right to a jury trial had the action proceeded without the declaratory judgment vehicle."[4] (*In re Lockheed Martin Corp.* (4th Cir. 2007) 503 F.3d 351, 355.) As one court explained, "[t]he right to jury trial in a declaratory judgment action depends . . . on whether the action is simply the counterpart of a suit in equity—that is, whether an action in equity could be maintained if declaratory judgment were unavailable—or whether the action is merely an inverted lawsuit." (*James v. Pennsylvania General Ins. Co.* (D.C. Cir. 1965) 121 U.S. App.D.C. 251 [349 F.2d 228, 230].) "Thus, to determine whether there is a right to jury trial in a

---

[4] Although the Seventh Amendment's "right of trial by jury" does not apply to the states (see *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 287, fn. 5 [51 Cal.Rptr.3d 519] (*Hodge*)), federal courts employ a similar historical test when analyzing whether the right to a jury attaches in federal civil proceedings. (See *Germain v. Connecticut National Bank* (2d Cir. 1993) 988 F.2d 1323, 1328 ["The standard test [under federal law] is to determine first whether the action would have been deemed legal or equitable in 18th century England, and second whether the remedy sought is legal or equitable in nature."].) We therefore have discretion to consider persuasive federal authority examining the circumstances under which the right to trial attaches. (See *Hodge, supra*, 145 Cal.App.4th at p. 287, fn. 5 [explaining that although 7th Amend. does not apply to the states, the court would consider persuasive federal case law on the right to a jury]; *Wisden v. Superior Court* (2004) 124 Cal.App.4th 750, 755–756 & fn. 5 [21 Cal.Rptr.3d 523] [utilizing federal authority to determine whether right to jury existed].)

declaratory judgment action, first it is necessary to determine in what kind of an action the issue would have come to the court if there were no declaratory judgment procedure. [¶] . . . [¶] . . . If there would have been a right to jury trial on the issue if it had arisen in an action other than one for a declaratory judgment, it must be tried to a jury in the declaratory action. Consequently, there is no right to trial by jury if, absent the declaratory procedure, the issue would have arisen in an equitable proceeding . . . ." (9 Wright & Miller, Federal Practice and Procedure (3d ed. 2008) § 2313, pp. 170–173, fns. omitted.)

### 2. Cases analyzing the right to a jury in declaratory relief actions seeking a determination of insurance coverage

Several California decisions have addressed whether the right to a jury attaches in declaratory relief actions seeking a determination of insurance coverage. In *State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428 [304 P.2d 13] (*State Farm*), the insured was involved in an automobile collision that left several people injured. The insurer brought a declaratory relief action to determine whether its policy covered the incident. While the case was pending, the injured parties filed personal injury actions against the insured. The trial court concluded that the right to a jury applied in both actions and consolidated the matters for trial. The jury returned a verdict against the insurer. On appeal, the insurer argued that the court erred in consolidating the matters.

■ Although the California Supreme Court acknowledged that the insurer had not appealed the jury trial issue, the court concluded that the trial court had properly decided the issue, explaining: "The general rule is . . . [that] '. . . if the issues of fact arising would have been triable by a jury as of right in an action which might have been substituted for the declaratory judgment action by either party, then there is a right to jury trial on such issues.' While [some prior decisions] . . . appear[] to hold that, regardless of the circumstances, the court in a declaratory relief action may dispose of all factual issues without a jury, such view fails to preserve the distinction between legal and equitable issues, and it must be disapproved. [Citation.] In short, the 'courts will not permit the declaratory action to be used as a device to circumvent the right to a jury trial in cases where such right would be guaranteed if the proceeding were coercive rather than declaratory in nature.' [Citations.]" (*State Farm, supra,* 47 Cal.2d at pp. 431–432.)

Subsequent decisions applying *State Farm* have concluded that there is a right to a jury in declaratory relief actions involving insurance coverage disputes. For example, in *Allstate Ins. Co. v. Normandie Club* (1963) 221 Cal.App.2d 103 [34 Cal.Rptr. 280] (*Normandie*), the defendant was involved

in an accident that caused injuries to several individuals in his car. After the injured parties filed personal injury actions against the defendant and his employer, the insurer instituted an action for "declaratory relief, seeking an adjudication that it had no duty either to defend the actions, or to pay judgments if recovered." (*Id.* at p. 105.) The appellate court concluded that, under such circumstances, "a jury was a matter of right" because the insurer had filed "an action for declaratory relief [as a] substitute[] for an action at law for breach of contract . . . ." (*Id.* at p. 106.)

In *Patterson v. Insurance Co. of North America* (1970) 6 Cal.App.3d 310 [85 Cal.Rptr. 665] (*Patterson*), the insured was involved in an automobile collision and was sued by the occupants of the other vehicle. The insured tendered his defense to his insurer, which refused to accept the case and filed a cross-complaint "to determine coverage under [the] liability insurance policy." (*Id.* at p. 313.) The parties agreed to try the declaratory relief action first. The "crucial issue" was whether the insured's automobile had been acquired to replace an older, previously insured vehicle. (*Ibid.*) The trial court submitted the issue to a jury, which found that the automobile qualified for coverage.

The insurer appealed, arguing that the trial court erred in submitting the matter to the jury. The appellate court concluded that the case was controlled by the holdings in *State Farm* and *Normandie*: "Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right. . . . In both [*State Farm*] and [*Normandie*], an insurance company brought an action for declaratory relief to determine coverage under a liability policy and its obligation to defend a personal injury action brought against the insured. In each case the court held that a jury trial was a matter of right. The instant case is indistinguishable. The cross-complaint . . . was instituted because appellant refused to provide defense for the personal injury actions as required by the policy, asserting a legal, rather than an equitable defense for its noncompliance. A jury trial was thus a matter of right." (*Patterson, supra,* 6 Cal.App.3d at pp. 315–316, citations & fn. omitted.)

Other cases have clarified that although there is generally a right to a jury trial in declaratory relief actions seeking a determination of insurance coverage, there is no reversible error in denying a jury trial if there are no factual issues for the jury to decide. For example, in *Savior, supra,* 51 Cal.App.3d 691, the defendant, Paul Savior, was involved in an accident with Anne Pisano, who owned an insurance policy. Pisano's insurer filed a declaratory relief complaint against Savior seeking a determination that the car Pisano was driving was not covered by her policy. The trial court granted the insurer's motion to strike Savior's jury demand and the case proceeded by

way of a bench trial. During the trial, the insurer presented evidence that Pisano's automobile was not insured until after the accident occurred. Savior offered no evidence to rebut this claim and the court entered a judgment in favor of the insurer.

On appeal, Savior argued that "the [trial] court erred in depriving [him] of a jury trial." (*Savior, supra,* 51 Cal.App.3d at p. 693.) The appellate court held that although "the trial court committed error in denying a jury to appellant, it was not prejudicial error." (*Id.* at p. 694.) The court explained that numerous prior cases had made "clear that an action by an insurance company against its putative insured, seeking a declaration that no coverage exists, is one in which a jury trial is a matter of right, since the declaratory relief action has been substituted for an action at law for breach of contract." (*Ibid.*) Despite this finding, the court ruled that a reversal was unwarranted because the record showed the insurer had introduced evidence demonstrating the automobile was not insured when the accident occurred and the appellant had offered no evidence in rebuttal. Thus, according to the court, "there were no real issues to present to the jury." (*Id.* at p. 695.)

In *California Casualty Indemnity Exchange v. Frerichs* (1999) 74 Cal.App.4th 1446 [88 Cal.Rptr.2d 858] (*Frerichs*), the insurer brought an action for declaratory relief "concerning the interpretation of a policy of homeowners insurance." (*Id.* at p. 1448.) The defendant in the case was injured by Paul Hudson, who was the insured's son. At the time of the incident, Hudson was "house-sitting" for the insured, who was on vacation. The policy provided coverage to all " 'residents of [the insured's] household.' " (*Id.* at p. 1449.) The issue in the case was whether the definition of the term "resident" extended to Hudson. The trial court concluded that the term was ambiguous and submitted a special verdict to the jury asking whether Hudson qualified as a resident of the home. The jury concluded that he did qualify as a resident and the court entered judgment against the insurer.

On appeal, the insurer argued that "the trial court erred in referring the question to the jury whether the policy term 'resident' is ambiguous." (*Frerichs, supra,* 74 Cal.App.4th at p. 1499.) The appellate court explained that "[n]otwithstanding that an action for declaratory relief is characterized as an action in equity, there is a right to a jury trial of material triable issues of fact concerning an inchoate breach of contract claim. [Citation.] For example, if an insurance policy is ambiguous, and the resolution of the ambiguity turns on disputed extrinsic evidence, the dispute must be resolved by a jury upon demand." (*Id.* at p. 1450.) The court further concluded, however, that the undisputed facts demonstrated that the term "resident" was unambiguous and that Hudson did not qualify as a resident. As a result, there was no proper issue to present to the jury for decision.

Similarly, in *Equitable Life Assurance Society v. Berry* (1989) 212 Cal.App.3d 832 [260 Cal.Rptr. 819] (*Equitable Life*), an insurer sought a determination as to whether its insured was entitled to disability benefits. After a bench trial, the trial court entered judgment in favor of the insurer. The insured appealed, arguing that he was entitled to a jury trial. The appellate court rejected the argument, explaining that "the jury issue [was] a red herring" because "the determinative issue" in the case was the proper "construction" of the disability policy, which was a "judicial function." (*Id.* at p. 836.)

### C. *Entin Is Entitled to a Jury Trial*

#### 1. *Provident's declaratory relief action is legal in nature*

Provident's complaint does not raise any dispute regarding the proper construction of the parties' insurance policies. Instead, it seeks a determination as to whether Entin is "totally disabled" within the meaning of those policies. To resolve this issue, the finder of fact will have to decide two matters that are currently in dispute: (1) whether Entin's migraine headaches have rendered him "[un]able to perform the substantial and material duties of [his] occupation" and (2) whether Entin is receiving "appropriate [care] for the condition."

■ Provident acknowledges that *State Farm, Normandie, Patterson* and *Savior* all concluded that the right to a jury applies when an insurer seeks "a declaration [against its insured] that no coverage exists." (*Savior, supra*, 51 Cal.App.3d at p. 694.) Provident, however, argues that those holdings do not apply here because it has continued to pay Entin disability benefits, thereby precluding him from pursuing a breach of contract claim in lieu of the declaratory relief action.[5] Provident asserts that, under such circumstances, the action is necessarily equitable in nature.

■ Provident's argument is predicated on the assumption that, in the context of declaratory relief actions, the right to a jury trial attaches only if a party could have asserted a legal claim in place of the declaratory relief action. In determining whether the right to a jury exists, however, the proper inquiry is not whether the defendant could have actually filed a countervailing legal claim, but rather whether " 'the *issues* [raised in the declaratory relief action] are legal or equitable in nature.' " (*Manneck, supra*, 28 Cal.App.4th at p. 1300.) Therefore, if the "gist" of a declaratory relief action involves the resolution of factual issues pertaining to a plaintiff's contractual

---

[5] For the purposes of this appeal, we will assume that Entin could not have asserted a breach of contract claim against Provident while it continued to pay him disability payments.

rights, the defendant is entitled to a jury regardless of whether that underlying legal claim remains "inchoate." (See *Frerichs, supra,* 74 Cal.App.4th at p. 1450 [right to jury attaches where a declaratory relief action "concern[s] an inchoate breach of contract claim"]; *Patterson, supra,* 6 Cal.App.3d at p. 315 [right to a jury trial applies when a declaratory relief action is "in effect used as a substitute for an action at law"].)[6]

■ Based on the allegations in Provident's complaint, it is apparent that the "rights involved" in this case are legal in nature and do not " 'depend[] upon the application of equitable doctrines.' " (*C & K Engineering, supra,* 23 Cal.3d at p. 9.) Provident's complaint raises questions of fact regarding whether Entin's medical condition entitles him to disability benefits under the parties' insurance contracts. Provident asserts that Entin is not entitled to contractual benefits because it has uncovered facts demonstrating that he is not totally disabled; Entin, on the other hand, asserts that he is entitled to contractual benefits because his doctors have concluded that he is totally disabled. Normally, "[t]he question whether respondent was totally disabled, under the rule and terms of the policy, is a question of fact for the jury to decide from all the circumstances surrounding the employment . . . ." (*Clark v. Metropolitan Life Ins. Co.* (1941) 47 Cal.App.2d 773, 779 [118 P.2d 919].)

The legal nature of Provident's claim is also demonstrated by the fact that, without the declaratory relief mechanism, this matter would have proceeded as an action at law. Provident has not identified any form of equitable claim that would have permitted it to obtain a binding ruling as to whether its decision to deny Entin future benefits would constitute a breach of the insurance policies. Instead, Provident would have had to decide whether to continue paying Entin benefits under the policies or to deny the claims, thereby forcing Entin to pursue a legal claim for breach of contract. Thus, without the declaratory relief mechanism, Entin would be entitled to have a jury decide whether he was totally disabled. Provident may not utilize the declaratory relief action to circumvent that right.[7] (See *State Farm, supra,* 47 Cal.2d at p. 432 [" '[C]ourts will not permit the declaratory action to be used

---

[6] *State Farm, Normandie, Patterson* and *Savior* make clear that an action is generally legal in nature if a party could have substituted a coercive legal claim for the declaratory relief action. However, those cases do not contain any language suggesting that the right to a jury only applies under those circumstances.

[7] Provident implies that if the right to a jury trial attaches under the circumstances presented here, insurers will have no incentive to continue paying an insured benefits while simultaneously pursuing a determination of the parties' rights. We disagree. By agreeing to pay benefits until a declaratory judgment is rendered, Provident has presumably insulated itself from (or at least bolstered its defense to) any tort claims predicated on the denial of those benefits. (See generally *Egan v. Mutual of Omaha Ins. Co* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141] [" '[When] the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.' "].)

as a device to circumvent the right to a jury trial in cases where such right would be guaranteed if the proceeding were coercive rather than declaratory in nature.' [Citations.]"].)

### 2. *Provident's action is not akin to a request for specific performance*

Provident raises two additional arguments in support of its assertion that Entin is not entitled to a jury trial. First, it contends that its claim is akin to a request for specific performance, which is an equitable remedy. Second, it argues that because neither party has sought monetary damages, its claim cannot be legal in nature.

### a. *Provident's declaratory relief claim is not akin to a request for specific performance*

■ Provident argues that the nature of the relief in this case—a declaration regarding the parties' future contract rights—is "equivalent" to a request for "specific performance . . . , unquestionably an equitable remedy." In support, Provident discusses two cases, *Caira, supra,* 126 Cal.App.4th 12 and *Insurance Co. of North America v. Amadei Sand & Gravel* (1999) 162 N.J. 168 [742 A.2d 550] (*Amadei Sand*), which purportedly "illustrate why a declaratory relief action . . . seeking a determination of rights under a contract is equivalent to one for specific performance." Although *Caira* and *Amadei Sand* demonstrate that a declaratory relief action seeking a determination of contract rights may, under certain circumstances, be akin to an equitable claim for specific performance, neither case has any similarity to the present dispute.

*Caira, supra,* 126 Cal.App.4th 12, involved a dispute over the ownership of a family company named Platypus Wear. Laurens Offner founded Platypus Wear and owned two-thirds of its shares; his two siblings owned the remaining shares. In 1986, Laurens entered into a written agreement to transfer 49 percent of Platypus Wear stock to his father, Franklin Offner, in exchange for a loan. The agreement described various contingencies that would revert the stock to Laurens. After Franklin died, Laurens and his siblings filed competing declaratory relief actions seeking a determination as to who owned the stock at issue in the 1986 agreement. The siblings argued that the 1986 agreement effectively transferred the stock to Franklin and that it remained the property of Franklin's estate. Laurens, however, argued that he owned the stock because the 1986 agreement had never been formalized and, even if it had, the contingencies necessary to reverse the transfer had been fulfilled. The case was submitted to a jury, which returned a ruling in favor of Laurens. The trial court, however, determined that the jury's findings

were only advisory because the action was equitable in nature. The court then found that the disputed shares were owned by Franklin's estate.

On appeal, Laurens argued that "he had the right, under the California Constitution, to a jury trial on the issue of the ownership of Platypus's common stock." (*Caira, supra,* 126 Cal.App.4th at p. 23.) Laurens argued that his siblings were using the declaratory relief action "in the place of a breach of contract action for damages." (*Id.* at p. 26.) The appellate court rejected the argument, explaining that the declaratory relief claims were "akin" to "[a]n action to quiet title . . . in that the plaintiff seeks a judgment declaring . . . rights in relation to a piece of property." (*Id.* at p. 24.) The court further explained that, to the extent the siblings' suit could be characterized as a contractual claim, "the gist of their action would be for specific performance of the 1986 Agreement" because they were seeking a declaration vesting title to the stock described in that agreement in Franklin's estate. (*Id.* at p. 27.) The court concluded that because actions to quiet title and claims for specific performance were historically treated as equitable matters, Laurens had no right to a jury.

*Caira* does not support the proposition that any declaratory relief action seeking a determination of prospective rights under a contract "is equivalent to one for specific performance." *Caira* merely concluded that the action before it was akin to either an action to quiet title or one for specific performance, which are both equitable in nature. Provident's declaratory relief claim, in contrast, does not seek to settle ownership over any piece of property nor does it seek to compel Entin to perform under the terms of the contract. (See *Behniwal v. Mix* (2007) 147 Cal.App.4th 621, 638 [54 Cal.Rptr.3d 427] ["an action for specific performance affirms the contract and asks that it be performed" (italics omitted)]; Code Civ. Proc., § 760.020, subd. (a) [providing for "action . . . to establish title against adverse claims to real or personal property"].) Instead, it seeks a declaration that excuses its performance because Entin is not totally disabled within the meaning of the insurance contracts.

The second decision cited by Provident, *Amadei Sand, supra,* 742 A.2d 550, has even less in common with this case. In *Amadei Sand,* the New Jersey Supreme Court considered whether its prior holding in *In re Environmental Ins. Declaratory Judgment Actions* (1997) 149 N.J. 278 [693 A.2d 844] (*Environmental Ins.*) applied to the facts before it.

The plaintiffs in *Environmental Ins.* filed a declaratory relief claim seeking a judgment that would require their insurers to pay for the environmental remediation of over 100 contaminated industrial sites located in 30 different states. The plaintiffs sought a determination that their insurers were required

to compensate them for "costs already incurred," which amounted to approximately $400 million, and to "defend and indemnify [them] for future liability," which was estimated to exceed $1 billion. (*Environmental Ins., supra*, 693 A.2d at p. 849.) Several insurers requested a jury trial. The trial court concluded that the action was equitable in nature and struck the jury demands. The New Jersey appellate court affirmed, characterizing the declaratory relief claim as "an . . . action for specific performance." (*Id.* at p. 850.)

The New Jersey Supreme Court began its analysis by explaining that, "[i]n a declaratory judgment action, the right to a jury trial depends on whether the action is the counterpart to one in equity or in law." (*Environmental Ins., supra*, 693 A.2d at p. 850.) The court further explained that, under New Jersey law, "[c]haracterization of the cause of action depends on the dominant relief sought and the nature of the proceeding that would provide the most complete resolution of the issues." (*Id.* at p. 852.)

The court concluded that the plaintiffs' declaratory relief claim exhibited characteristics that were more consistent with the equitable remedy of specific performance than the traditional legal remedy of damages. First, the court noted that "issues in environmental coverage actions are uniquely complex" and frequently require "creative procedural responses" that are more appropriate to equitable proceedings. *Environmental Ins., supra*, 693 A.2d at pp. 851–852.) Second, the court explained that the plaintiffs sought a remedy that would apply to numerous different insurers and industrial sites. According to the court, "if left to their legal remedy, [plaintiffs] would be required to file multiple future breach-of-contract actions each time an insurer refuses to defend or indemnify them. Only specific performance can place [plaintiffs] in the position they assert they would have been, had the defendant-insurers performed their contractual obligations. [¶] As the doctrine of ancillary equitable jurisdiction illustrates, avoidance of a multiplicity of lawsuits appropriately limits the right to a jury trial. If an action is primarily equitable, a court of equity may assume jurisdiction over ancillary legal issues. [Citation.] The exercise of ancillary equitable jurisdiction avoids a multiplicity of actions and permits a court to do complete justice. [Citation.]" (*Id.* at p. 852.)

Third, the court concluded that the plaintiffs' claim was akin to a request for specific performance because it was impossible to put a monetary value on the request for declaratory relief: "[Plaintiffs] seek substantial future damages. The amount of the damages, however, are both uncertain and unknown. When a court cannot reasonably ascertain the amount of damages, specific performance emerges as the more appropriate remedy." (*Environmental Ins., supra*, 693 A.2d at p. 852.)

The court repeatedly emphasized that its decision should not be construed as a "wholesale revision of the traditional right to a jury trial in declaratory-judgment actions involving insurance policies." (*Environmental Ins., supra*, 693 A.2d at p. 851; see *id.* at p. 853 ["We do not reach the broader question concerning the extent to which the right to a jury trial attaches to actions for coverage on other kinds of insurance policies."].) The court also explained that its holding was "limit[ed] . . . to declaratory judgment actions for insurance coverage for the recovery of future environmental remediation costs. The predominance of equitable issues and complexity of the underlying action distinguishes those actions from coverage actions under other kinds of insurance policies." (*Ibid.*)

Two years after issuing *Environmental Ins.*, the New Jersey Supreme Court revisited that decision in *Amadei Sand, supra*, 742 A.2d 550. The issue presented in *Amadei Sand* was whether the right to a jury applied when the insurer, rather than the insured, initiated a declaratory relief action to determine coverage for future environmental remediation costs. The court explained that, in *Environmental Ins.*, it had concluded that "[t]he issues framed in [a declaratory relief action seeking coverage for environmental remediation] make it inappropriate for jury consideration because of the uncertainty regarding potential damages, and thus, the inadequacy of the potential remedy at law." (*Id.* at p. 555.) The court concluded that the same rationale applied regardless of whether the insurer or the insured initiated the action: "In either factual matrix, the essential determination is whether the insurer must indemnify the insured for future, uncertain remediation costs." (*Ibid.*)

The case before us has little in common with *Environmental Ins.* or *Amadei Sand*. The issues presented here do not involve environmental remediation nor are they "uniquely complex." (*Environmental Ins., supra*, 693 A.2d at p. 851.) The case does not involve multiple insurers, multiple insureds or multiple insurance policy provisions.[8] Finally, the potential costs of Entin's disability benefits are not uncertain because the total amounts of those benefits are stated in the policies themselves. Thus, none of the characteristics discussed by the New Jersey Supreme Court are present in this dispute.

b. *The absence of a claim for monetary damages does not preclude the right to a jury*

Provident also argues that, even if its remedy cannot be characterized as a request for specific performance, cases from other jurisdictions demonstrate

---

[8] Although this case does involve two different insurance policies, both policies contain identical definitions of the term "totally disabled."

that "[t]here is no right to a jury trial in a declaratory relief action such as this one where monetary damages are not at issue." Provident's argument is not persuasive.

 First, regardless of what the law may be in other jurisdictions, our courts have clarified that while the mode of relief is a "factor[]" that may be considered when assessing the right to a jury trial, it is not "determinative." (*Caira, supra*, 126 Cal.App.4th at p. 24.) For example, in *C & K Engineering, supra*, 23 Cal.3d 1, the California Supreme Court concluded that the gist of the plaintiff's action was an equitable claim for promissory estoppel and, as a result, the right to a jury did not apply. In reaching its holding, the court explained that although the complaint sought monetary damages, that request did not alter the nature of the rights at issue. (See *C & K Engineering, supra*, 23 Cal.3d at pp. 8–9 [request for monetary damages was insufficient to establish right to a jury trial because "the prayer for relief in a particular case is not conclusive . . ."].) The same is true here. Provident's declaratory relief action involves the resolution of disputed factual issues regarding Entin's entitlement to contract benefits. The mode of relief requested by Provident does not alter the legal nature of those rights.[9]

Second, the two cases on which Provident relies—*Travelers Indemnity v. Cochrane* (1951) 155 Ohio St. 305 [98 N.E.2d 840] (*Cochrane*) and *Jensen Internat. Inc. v. Kelly* (2001) 29 Kan.App.2d 836 [32 P.3d 1205] (*Jensen*)—did not hold that there was no right to a jury trial based solely on the fact that neither party sought monetary damages. In *Cochrane*, an insurer brought a declaratory relief action seeking a determination whether the insured had engaged in conduct that invalidated his automobile insurance policy. Although the defendant denied that his conduct had invalidated the policy, he did not file a cross-complaint for damages.

The court concluded that there were two reasons why the insured was not entitled to a jury. First, the court explained that Ohio's general code required that " '[i]ssues of fact arising in actions for the recovery of money only . . . shall be tried by a jury . . . . [¶] . . . [¶] 'All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury . . . .' "

___

[9] Our courts have also emphasized that where the relief consists solely of a declaration of rights, it is of limited aid in determining whether the underlying issues are legal or equitable in nature. (*Veale, supra*, 206 Cal.App.2d at p. 561 ["task" of " '[d]etermining whether an action is legal or equitable' " is " 'multiplied when the relief sought is a "sui generis" declaration in which event the court is even deprived of the advantage of considering the prayer as an indication of whether or not the claim is addressed to equity' "].) As concisely expressed by the Supreme Court of Illinois, "[w]hen a declaration of rights is the only relief sought, the predominant characteristics of the issues in dispute determine whether there exists the right to a jury trial." (*Zurich Ins. Co. v. Raymark Industries, Inc.* (1987) 118 Ill.2d 23 [112 Ill.Dec. 684, 514 N.E.2d 150, 166].)

(*Cochrane, supra,* 98 N.E.2d at p. 845.) The court concluded that the language of the Ohio code permitted the case to be tried by the court because neither party had sought monetary recovery. Second, the court explained that "there was no substantial dispute as to the acts of [defendant] which [the insurer] claimed constituted a breach of the insurance contract." (*Id.* at p. 846.) Thus, the only issue decided by the trial court was whether these undisputed acts " 'constitute[d] a . . . breach of a written contract, [which presented] a question of law for the court.' " (*Ibid.*)

The above summary makes clear that the holding in *Cochrane* was predicated on two factors that are inapplicable here: an Ohio statute, which has no relevance in this California proceeding, and the nature of the issues raised in the dispute, which were questions of law rather than questions of fact.

In *Jensen, supra,* 32 P.3d 1205, the plaintiff brought a declaratory relief action seeking a determination that the defendants had violated a covenant not to compete, thereby invalidating their right to collect annual payments described in a settlement agreement. The Kansas appellate court concluded that the plaintiff was not entitled to a jury because the predominant issue before the trial court involved the "construction of the agreement and the covenants" and because "no monetary damages [were] involved." (*Id.* at p. 1212.) In support of its ruling, the court cited a decision from the Kansas Supreme Court explaining that no right to a jury attached in a declaratory judgment action in which the plaintiff had sought the "proper interpretation" of a contract and in which neither party had sought monetary relief.

Unlike *Jensen,* the predominant issue in this case does not involve the proper construction of Entin's disability policy. Provident's complaint does not allege that the parties dispute the meaning of any term in the policy. It asserts only that they disagree as to whether Entin's migraine headaches have rendered him incapable of performing the substantial and material duties of his profession and whether he is seeking appropriate treatment for his condition. These are pure issues of fact and Entin was entitled to have a jury decide them. (Cf. *Equitable Life, supra,* 212 Cal.App.3d at p. 836 [defendant's contention that he was entitled to a jury in a declaratory relief action involving contractual rights was a "red herring" because "the determinative issue . . . [was] the . . . construction [of the insurance policy] . . . ," which was a "judicial function"].)

## DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to vacate its order denying Entin's request for a jury trial and enter a new order granting the request. Petitioner shall recover his costs in this proceeding.

Perluss, P. J., and Woods, J., concurred.